DELANEY *v.* HEARTT *et al.*

(*Supreme Court, General Term, Third Department.* July 7, 1890.)

MASTER AND SERVANT—DEFECTIVE APPLIANCES—PERSONAL INJURIES.

In an action for wrongful death, it appeared that deceased was employed in defendant's foundry to handle, fill, and empty the ladles of melted iron operated by a crane. The chain to which the ladle was attached broke, and deceased was struck by the ladle. It was not shown what caused the chain to break, as it was of sufficient size, and had not been in use too long. It often got twisted while passing over the drum, and would slip from the previous coil upon which it "rode" onto the drum, "snapping" down an inch or two. Deceased was aware of the tendency of the chain to twist. *Held,* that a nonsuit was properly granted.

Appeal from circuit court, Rensselaer county.

Action by Mary Delaney, as administratrix of Daniel Delaney, against Jonas S. Heartt, George W. Sweet, and Fred W. Sweet, for the wrongful death of her husband, who was killed in defendants' foundry. Plaintiff appeals from nonsuit.

Argued before LEARNED, P. J., and LANDON, J.

*Robertson & Whitman,* (*James M. Whitman,* of counsel,) for appellant. *Warren, Patterson & Gambell,* (*Charles E. Patterson,* of counsel,) for respondents.

LEARNED, P. J. This is an appeal from a judgment on a nonsuit at circuit. The plaintiff sues to recover for the death of her husband, Daniel Delaney, alleged to have been caused by the negligence of defendants, in whose employment he was at his death. Defendants are manufacturers, and part of their business is the manufacture of cast-iron car-wheels. In their foundry are revolving cranes, consisting of an upright shaft, and a horizontal arm at the top. The upright revolves. Near its bottom is a windlass, around the drum of which an iron chain is wound by the turning of the crank of the windlass. The chain passes from the drum along upward to the end of the horizontal arm, and so down, ending in a hook. That hook supports a large ladle or kettle, which receives the melted iron. By means of the windlass, this ladle is lowered into a pit, about 10 inches deep, near the furnace, and the melted iron is allowed to run into it. Then it is swung by means of the crane, and the iron is poured into smaller ladles, from which it is emptied into the moulds. This ladle has a projecting handle on each side, and each

of these handles is at the end divided into two, so that the workman, standing between, takes one in each of his hands. In this way, two workmen move the suspended ladle to the place where the iron is needed, and, by tipping it, pour the iron out. It is the business of workmen, of whom deceased was one, to handle, fill, move, and empty the ladles. On the day of the accident, the workmen had commenced to pour off. The large ladle had been filled with melted iron, and had been hoisted so as to be about three feet from the pit, and about fifteen inches from the ground. The chain broke. The ladle came down. One end, as described, of the ladle (that is, apparently, the projecting handle) was turned down upon the deceased, and held him down; and the melted iron flowed over him. He died in a few days from the effects of the burning. The deceased had nothing to do with the hoisting of the ladle. That was done by laborers at the windlass. The plaintiff's contention is that the chain broke by reason of its being old and worn out, and, secondly, by a defect, owing to which it did not wind around the drum in a proper manner, but "rode;" that is, the chain wound upon the part of the chain already wound, and then slipped off to the drum, and thus allowed the ladle to drop an inch or two. The broken link was not produced at the trial, and no evidence was given as to its condition. A broken link had been found, but it had been lost before the trial. The chain was a seven-sixteenths or half inch chain. The weight of the iron which it was required to hoist, including the ladle, was 1,400 pounds; and this it did about 12 times a day. The strength of such a chain is 13,444 pounds, when new and perfect. There was evidence that some of the links on this chain were half worn, or a third worn, where they came together. It is shown that such an amount of work, as above stated, does not strain the iron, or cause it to crystallize, and that the life of such a chain is five to ten years. This chain had been used two years. How much longer is not shown.

There is evidence tending to show that the riding of the chain on the drum of the windlass was owing to the twisting of the chain; and it can readily be understood that a twist in the chain might make it, instead of following the the grooves in the drum, rise up, and ride the adjoining coil of chain. One witness testifies that in the "shaking out" (whatever that may be) there is a long slack of chain that goes from the horizontal part of the crane to the hook, and a twist would come in that slack. The deceased was a "kind of foreman" of the floor, and it was the duty of the man that had charge of the floor to take the twist out of the chain. Another witness testifies that the twist would be in the part of the chain between the drum and the sheave. There was a "snapping" heard occasionally. But it is shown that this snapping came from the same circumstance above mentioned,—that is, the riding of the chain, and its then slipping off upon the drum,—and this snapping had been several times noticed by the deceased, and he had complained about it. There is some evidence that one part of the chain was of a different size from the other. But that which was smaller was the part which went around the drum, and that was not the part which broke. There is no evidence showing what it was which caused this twisting of the chain. It is not shown that this was due to the wear of the links, although that is urged by the plaintiff. Indeed, an expert for the plaintiff testifies that, if the links were worn a third, the chain would be less liable to twist. We cannot, therefore, say that there was evidence that the machinery provided by defendants was not suitable and proper. True, the chain was somewhat worn, but, plainly, not enough to make it insufficient to do the work. What was the immediate cause which broke the link does not appear; but it may be supposed that it was the riding of the chain, and its sudden slipping off upon the drum, thus letting the ladle drop, as said in some cases, an inch or two. This may have caused a sudden strain, more than the chain would resist. Now, an examination of the case shows that this riding was the result, not of the wearing of

the chain, but of its twisting; and this is apparent from a consideration of the circumstances. A twist in the chain in one direction would tend to make it ride, while a wearing of the links would not, so far as we see, have that tendency. Such, too, is the evidence in the case. It cannot be said to have been the duty of the defendants to take the twist out of the chain. That should be done by the workmen who were using it. It does not appear that there was any appliance in ordinary use which would prevent this twisting. A witness who worked on the floor testified that he had often seen the chain twisted, and had taken the twists out himself. So that it appears that this was a matter which devolved upon those who were using the chain, and upon the deceased, among the rest; and deceased had knowledge of this tending in the chain. If, then, he neglected to take out the twist, that was his own negligence. If other workmen neglected this, that was the negligence of co-employes. The machinery of the defendants was not improper for its purpose, as the machinery was admitted to be in *Stringham* v. *Stewart*, 100 N. Y. 516, 3 N. E. Rep. 575; for, if not twisted, the chain worked right. We might further say that it is rather matter of conjecture than of proof to assert that the riding was the cause of the breaking of the link. There might have been a flaw in the iron, or some unknown defect for which defendants would not be responsible. There is not even proof what force would be exerted by the fall of a weight of 1,400 pounds for the space of one inch or two, and whether that force would be sufficient to break such a chain as that in question. The authorities on matters like the present are so well known that it is unnecessary to cite them. The only difficulty is in applying them to the case at hand. On a careful examination of the evidence, we think the non-suit was properly granted. Judgment affirmed, with costs.